# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

KURT STOKINGER and JANELLA STOKINGER,

                    Plaintiffs,

                v.

ARMSLIST, LLC,

                    Defendant.

Civil Action No. 1:23-CV-00428-PB

## MEMORANDUM OF LAW IN SUPPORT OF ARMSLIST, LLC'S MOTION TO DISMISS CLAIMS AS BARRED BY THE STATUTE OF LIMITATIONS, *RES JUDICATA*, COLLATERAL ESTOPPEL AND COMMUNICATIONS DECENCY ACT

Defendant Armslist, LLC ("Armslist"), by and through its attorneys, McLane Middleton, Professional Association, pursuant to Fed. R. Civ. P. 12(b)(6), submits this memorandum in support of its Motion to Dismiss Claims as Barred by the Statute of Limitations (N.H. RSA 508:4), *Res Judicata*, Collateral Estoppel and the Communications Decency Act of 1996 (47 U.S.C. § 230) (hereinafter, the "CDA").  In support of its motion, along with the Declaration of Andrew R. Hamilton, Esq., Armslist states as follows:

## I.  INTRODUCTION

Plaintiffs want a second bite at the apple. Plaintiffs filed first in the Suffolk County, Massachusetts Superior Court, which dismissed their claims as barred by the CDA *and* for lack of personal jurisdiction over Armslist (with prejudice).  Undeterred, Plaintiffs now assert nearly identical claims against Armslist.  Plaintiffs claim Armslist should be liable because a felon named Grant Headley ("Headley") allegedly shot Plaintiff Kurt Stokinger, a Boston, Massachusetts police officer, on January 8, 2016, when the sole, alleged connection between

Headley and Armslist is that the shooter allegedly bought the gun from another felon, Daniel

Sullivan, ("Sullivan") or from his live-in girlfriend, Sara Johnson ("Johnson"), who, in turn,

bought the gun from an Armslist user, Derek McNamara ("McNamara").  Armslist has no

relationship whatsoever with Headley.  Armslist operates Armslist.com, a website where users

post their own listings for, among other things, the sale of firearms and firearms-related products.

The McNamara listing is Armslist's sole connection to the shooting.

In their previous suit in the Suffolk Superior Court, Plaintiffs' claims against Armslist

were nearly identical to the allegations contained in the present action.  Armslist brought two

motions to dismiss Plaintiffs' claims against Armslist arguing: (i) that the claims were barred by

the CDA (the "CDA Motion"); and (ii) that the Suffolk Superior Court lacked personal

jurisdiction over Armslist (the "Jurisdictional Motion").  On March 13, 2020, the Suffolk

Superior Court granted the CDA Motion but deferred ruling on the Jurisdictional Motion, noting

it was not necessary in light of its order on the CDA Motion.  After Armslist sought

reconsideration of the order, and after Plaintiffs were granted six months of jurisdictional

discovery, the Suffolk Superior Court granted the Jurisdictional Motion on December 14, 2021,

and noted: "The claims against Armslist are hereby **DISMISSED**, with prejudice."

Plaintiffs did not seek reconsideration of either of the Court's Order nor did they appeal.

Instead, they waited until September 12, 2023 to file this action —over three years after the

Suffolk Superior Court issued its Order on the CDA Motion and almost two years after it issued

its Order on the Jurisdictional Motion.  Plaintiffs' second action is improper for several reasons.

First, Plaintiffs' claims are time-barred.  Officer Stokinger was shot in January 2016, well past

New Hampshire's three-year limitations period.  Although Plaintiffs assert in their complaint that

New Hampshire's so-called Savings Statute has preserved their claims, that statute does not

apply because (1) the Suffolk Superior Court issued two decisions on the merits; and (2) more than a year has passed since the court dismissed Armslist.  Second, Plaintiffs' claims are barred by *res judicata*.  The Suffolk Superior Court's Orders dismissing Plaintiffs' claims against Armslist—the same claims and same parties in this action—are final judgments on the merits and subject to the full faith and credit of this Court.  Third, Plaintiffs' claims are still barred by the CDA, and the Suffolk Superior Court's decision on this issue collaterally estops Plaintiffs from raising the issue again in this Court.  Fourth, as discussed in the contemporaneously filed Motion to Dismiss for Lack of Personal Jurisdiction, this Court does not have personal jurisdiction over Armslist, pursuant to the New Hampshire Long-Arm Statute and under the Due Process Clause of the 14th Amendment of the United States Constitution.  There is no reason, equitable or legal, to give the Plaintiffs a second bite at the apple.  The action must be dismissed.

## II.    FACTUAL BACKGROUND

### A.    <u>The Massachusetts Action</u>[1]

On October 18, 2018, Plaintiffs filed a seven-count complaint against Armslist, Headley and Johnson in the Suffolk Superior Court in an action captioned *Kurt Stokinger and Janella Stokinger v. Armslist, LLC, Grant Headley, and Sara Johnson*, Civil Action 1884CV3236 (the "Massachusetts Action").  A copy of the Complaint in the Massachusetts Action is attached as **<u>Exhibit A</u>** to the Declaration of Andrew R. Hamilton (hereinafter, the "Hamilton Decl.").  The Massachusetts Action arose out of the shooting, allegedly by Headley, of Officer Stokinger in Boston, Massachusetts in 2016.[2]  Headley allegedly bought the gun used to shoot Officer

---

[1] For purposes of this Motion, Armslist assumes the complaint's cited allegations are true. Armslist reserves and does not waive its right to deny any of the complaint's allegations should Armslist be required to file an answer.

[2] Notably, a Suffolk County Jury did not find Headley guilty of the shooting.  *See* Press Release, Suffolk Cnty. Dist. Att'y Mass., Lengthy Prison Sentence after Split Verdict in 2016 Gun Case

Stokinger from Johnson and/or her boyfriend Sullivan, a convicted felon.  Hamilton Decl., Ex.

A, ¶¶ 139, 142.  Johnson, in turn, had allegedly purchased the gun from McNamara in New

Hampshire. *Id*. at ¶ 137.  McNamara had listed the gun for sale on Armslist.com, a website

operated by Armslist.  *Id*. At the time, Armslist.com permitted private parties to, among other

things, post firearms and firearm accessories for sale at no cost to the user.[3]  Johnson allegedly

saw the listing, contacted McNamara, and they met in person for him to sell her the gun.

The Complaint sought recovery from Headley, Johnson, and Armslist for Plaintiffs'

injuries arising from Officer Stokinger's shooting.  The Plaintiffs' claim against Headley was for

assault and battery arising out of the shooting (Count I); their claim against Johnson was for

negligence arising out of the transfer of the gun at issue to Headley (Count II); and their claims

against Armslist were for negligence, arising out of Armslist's alleged mis-design of its website

which Plaintiffs allege failed to prevent buyers prohibited from purchasing firearms from

obtaining firearms (Count III); aiding and abetting Johnson's and/or Sullivan's negligent transfer

of the gun to Headley by "brokering" the lawful transaction between McNamara and Johnson

(Count IV); and public nuisance, by unreasonably interfering with the rights of the general public

by facilitating gun sales (Count V).[4]

Further, the Complaint alleged Armslist's design of its website was a "substantial factor"

in the shooting of Officer Stokinger.  *Id*. at ¶ 178.  It asserted Armslist failed to: "employ

---

(June 22, 2021), https://www.suffolkdistrictattorney.com/press-
releases/items/2021/6/22/lengthy-prison-sentence-after-split-verdict-in-2016-gun-case. ("[A]
Suffolk County jury last week found him guilty of firearm offenses but acquitted him of shooting
a Boston Police officer.").

[3] Premium users which include federally licensed gun-dealers pay a subscription fee.  Armslist
also receives revenue from other companies who advertise on its website.

[4] A sixth count, brought by Mrs. Stokinger for loss of consortium, is derivative of the liability, if
any, of the other counts against the Defendants.

reasonable design safeguards," including "questioning, screening, warnings, instructions and monitoring that would prevent illegal buyers and sellers from using its site . . . ."  *id*. at ¶ 177(c); and "to provide mechanisms that would allow sellers to vet purchasers' purchase history so as to determine whether any red flags exist."  Hamilton Decl., Ex. A, ¶ 177(e).  It also alleged Armslist failed to implement "measures that would prevent illegal gun dealing on its website," *id*. at ¶ 107(d), including: "monitoring high-volume sellers," *id*. at ¶ 153; "requiring both buyers and sellers to register and provide credit-card verified evidence of their identity," *id*.; and "requiring sellers to conduct background checks on would-be gun buyers."  *Id*. at ¶ 114(f).

> **1.   *Armslist filed two Motions to Dismiss the Complaint based on lack of Personal Jurisdiction and on the grounds that Plaintiffs' claims were barred by the CDA.***

On March 29, 2019, Armslist filed two independent motions to dismiss the Massachusetts Action.  First, it filed a Motion to Dismiss Due to Lack of Personal Jurisdiction arguing the Suffolk Superior Court lacked personal jurisdiction under either the Massachusetts Long-Arm Statute or the Due Process Clause of the United States Constitution over Armslist (the "Jurisdictional Motion").  The motion noted that Armslist's only connection with the alleged shooting of Officer Stokinger by Headley was the listing of the gun for sale by McNamara on Armslist.com, which was inadequate to establish "specific jurisdiction."  The Jurisdictional Motion also argued that because Armslist is a Pennsylvania company with no employees in Massachusetts, does not receive direct revenue from the sale of firearms listed on its website, and its revenue generated from membership subscriptions in 2015 and 2016 from Massachusetts was less than $1,000 each year, those factors constituted *de minimus* connections with Massachusetts insufficient to establish "general jurisdiction."

Second, Armslist filed its Motion to Dismiss Claims as Barred by the Communications Decency Act, arguing that the company was immune from liability under the CDA as an internet

service provider (the "CDA Motion").  The CDA Motion noted that the Complaint sought to hold Armslist liable for hosting on Armslist.com what was, in essence, a classified advertisement provided by a user—McNamara—and sought to convert Armslist into the author of the website listing, not the host, so the Plaintiffs could avoid the liability protections the CDA provides.  The CDA Motion objected to the Plaintiffs' attempt to circumvent the CDA with allegations that Armslist was liable not for the publication of the McNamara listing, but instead for Armslist's *conduct* in deciding how to order and structure its website, by relying on a panoply of cases rejecting the Plaintiffs' theory, including *Jane Doe No. 1 v. Backpage.com*, LLC, 817 F.3d 12, 18 (1st Cir. 2016).

> ### 2.    *The Superior Court issued two Orders, on the merits, dismissing Armslist from the Massachusetts Action.*

By order dated March 13, 2020, the Suffolk Superior Court granted Armslist's CDA Motion (the "CDA Order").   A copy of CDA Order is attached to the Hamilton Decl. as **Exhibit B**.  The Court held: "The Court concludes that Armslist is not an information content provider, and that the Stokingers' claims are based on complaints about posted content created or developed by a third-party."  Hamilton Decl., Ex. B, p.14.  The Court did not reach the Jurisdictional Motion, noting at footnote 3 that "Armslist also filed a motion to dismiss for lack of personal jurisdiction but in light of the instant ruling, the court need not address the jurisdictional issue." *Id*. at p. 1, n.3.

Following the issuance of the CDA Order,[5] Plaintiffs indicated a desire to immediately appeal the order.  Armslist did not oppose an appeal, but believed for judicial efficiency the Jurisdictional Motion should be determined prior to the appeal to avoid the risk that the appellate

---

[5] For reasons that are unclear but may be attributable to the COVID-19 pandemic, the CDA Order was not served by the Court until April 28, 2020.

court might remand the case with instructions for the Jurisdictional Motion to be adjudicated.

On May 21, 2022, Armslist filed its Motion for Partial Reconsideration asking the court to

adjudicate the Jurisdictional Motion.  Plaintiffs objected, arguing there was no need to reach the

Jurisdictional Motion before they appealed the CDA Order, but they also requested that

jurisdictional discovery be permitted before the Court ruled on the Jurisdictional Motion.  By

order dated October 8, 2020, the Court granted Plaintiffs six months of jurisdictional discovery.

Following the close of discovery, Armslist renewed the Motion for Partial Reconsideration.  On

September 1, 2021, a hearing was held on the Jurisdictional Motion.  By order dated December

14, 2021, the Suffolk Superior Court ruled on Armslist's Jurisdictional Motion (the

"Jurisdictional Order").  A copy of the Jurisdictional Order is attached to the Hamilton Decl. as

**Exhibit E**.  The Order noted (a) the Court's previous order granting the CDA Motion; and (b)

Armslist's request for the Court to adjudicate the Jurisdictional Motion prior to any appeal of the

CDA Order.  The Court granted the Jurisdictional Motion, concluding:

> Armslist's activities in Massachusetts were completely unrelated and extraneous to the
> sale between Johnson and McNamara in New Hampshire and the shooting that occurred
> thereafter.  This absence of a nexus between plaintiffs' claims and defendant's forum
> related activities means that any assertion of jurisdiction would not comport with due
> process.
>        ***
> For the reasons set forth above, Armslist, LLC's Renewed Motion for Partial
> Reconsideration to Dismiss the Case for Lack of Personal Jurisdiction is **ALLOWED**.
> The claims against Armslist are hereby **DISMISSED**, with prejudice.

Hamilton Decl., Ex. E, p. 7–8 (emphasis in original).  Following the issuance of the

Jurisdictional Order the Suffolk Superior Court docket provided: "Party status: Defendant

Armslist LLC: Dismissed by Court Order." A copy of the case docket is attached to the Hamilton

Decl. as **Exhibit F.**

Despite their previously stated intention to do so, Plaintiffs took no action to appeal the Jurisdictional Order or the CDA Order.  They also failed to take any other action in the Massachusetts Action to pursue the claims against the remaining Defendants.  On September 23, 2022, the Suffolk Superior Court issued a Notice of Status Review of the Docket to inquire about the status of the case and ordered the Plaintiffs to reply by October 24, 2022, failing which, "the complaint will be automatically dismissed." *See* Hamilton Decl., Ex. F. Plaintiffs failed to respond, and, as a consequence, on October 31, 2022, the Suffolk Superior Court dismissed the complaint without prejudice. *See id.*

### B.      The New Hampshire Action

On September 12, 2023, Plaintiff filed this action against Armslist (the "New Hampshire Action").  The New Hampshire Action does not seek relief against Headley or Johnson.  However, but for the exclusion of claims against Headley and Johnson, the operative facts pled in the New Hampshire Action are substantially identical to those facts pled in the Massachusetts Action.  Likewise, the Counts pled against Armslist track the claims asserted in the Massachusetts Action.  In this action, the Plaintiffs assert claims for: (1) Negligence (Count I); (2) Aiding and Abetting Tortious and Illegal Conduct (Count II); (3) Public Nuisance (Count III); (4) Loss of Spousal Consortium (Count IV); and (5) Loss of Support (Count V).

Recognizing the alleged injuries suffered by Plaintiffs occurred seven years ago, well beyond the three-year statute of limitations for personal actions in New Hampshire, Plaintiffs rely on N.H. RSA 508:10, the Savings Statute.  Ignoring the CDA Order (March 13, 2020) and the Jurisdictional Order (December 14, 2021) by which the Court dismissed the claims against Armslist with prejudice, Plaintiffs allege at Paragraph 6 of the Complaint:

> An earlier action involving the above-named parties that was filed in the Commonwealth of Massachusetts, Suffolk County Superior court [*sic*], docket number 1884CV03236,

was dismissed without prejudice on October 31, 2022, with notice sent to the parties on November 1, 2022.  N.H. R.S.A. 508:10 authorized the filing of a new action within one year after the previous judgment.

Compl., Dkt. 1, ¶ 6.

Plaintiffs are mistaken.  The New Hampshire Action is barred by the previous orders of the Suffolk Superior Court, both of which were entered well more than one year before Plaintiffs filed this case.  The Court should apply the applicable statute of limitations and other defenses discussed below to prevent a re-litigation of this case—which should be dismissed.

## III.    ARGUMENT

### A.    Plaintiffs' Claims Are Barred by the Statute of Limitations Because the Savings Statute Cannot Be Utilized.

Despite the fact that Plaintiffs' claims were dismissed by the Suffolk Superior Court "with prejudice" on December 14, 2021 (at the latest), Plaintiffs allege they are permitted to refile an essentially identical action with this court and have the action adjudicated a second time.  *See* Compl., Dkt. 1, ¶ 6.  Plaintiffs rely on New Hampshire's Savings Statute.  That law states that, "[i]f judgment is rendered against the plaintiff in an action brought within the time limited therefor, or upon a writ of error thereon, and the right of action is not barred by the judgment, a new action may be brought thereon in one year after the judgment."  N.H. RSA 508:10.  The Savings Statute's purpose is to allow a diligent party to refile an action that was dismissed *without* a decision on the merits and which would otherwise be barred by a statute of limitations that expired while the initial action was pending.  *See Foster v. Bedell*, 136 N.H. 728, 730 (1993) (rejecting a second suit because the dismissal of a first suit, due to the plaintiffs' failure to comply with the court's order, constituted a judgment on the merits); *Berg v. Kelley*, 134 N.H. 255, 259 (1990) ("It would be incongruous to deny the plaintiffs the benefit of RSA 508:10, when in fact they were so diligent as to commence their second suit immediately upon

notification by the superior court clerk's office that the first writ was defective."); *Adams v. Sullivan*, 110 N.H. 101, 105 (1970) (finding that the Savings Statute applies to cases dismissed for procedural defects, such as defective service of process).

The Savings Statute is not a free pass.  For it to apply, Plaintiffs must clear two hurdles: (1) a right of action on the claims must not have been barred by entry of the previous judgment; and (2) the new action must be brought within one year after previous judgment was entered dismissing the claim.  Neither requirement is met here.

### 1.    The Massachusetts Action Resulted in a Judgment on the Merits Because the Claims Against Armslist Were Dismissed with Prejudice.

The Savings Statute does not apply here because the prior case was decided on the merits. *See, e.g., Berg*, 134 N.H. at 257 (noting that N.H. RSA 508:10 saves a time-barred action only if it was "dismissed for reasons not barring the right of action or determining it upon its merits. The test of RSA 508:10 is whether the right of action is, or is not, barred by the first judgment.") (quotations, citations and brackets omitted).

In the Massachusetts Action, the Suffolk Superior Court issued two dismissals on the merits.  First, by the CDA Order, the court (Brieger, J.) granted "Armslist's motion to dismiss for failure to state a claim under Mass. R. Civ, P. 12(b) (6)," concluding that "Armslist is . . . entitled to immunity under the CDA."  Hamilton Decl., Ex. B, p. 14.  A dismissal based on a failure to state a claim constitutes a judgment on the merits.  *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); *see also Jenks v. Menard,* 145 N.H. 236, 239 (2000) ("The dismissal of a writ for failing to state a claim upon which relief may be granted is a substantive decision based on the merits of the case."); *see e.g.*, *Kerouac v. F.D.I.C.*, 825 F. Supp. 438, 442 (D.N.H. 1993). ("[A] state dismissal for failure to state a cause

10

of action upon which relief may be granted, *if not modified or appealed*, operates as a final judgment on the merits under New Hampshire law.") (emphasis added).

Second, by the Jurisdictional Order, the court (Sanders, J.) granted Armslist's renewed Motion for Partial Reconsideration, resulting in the dismissal of the case against Armslist for lack of personal jurisdiction. The effect of this decision was definite and unambiguous: "[t]he claims against Armslist are hereby **<u>DISMISSED</u>**, with prejudice,"[6] (emphasis in original). Hamilton Decl., Ex. E, p. 8. The New Hampshire Supreme Court has been clear: "A judgment entered 'with prejudice' constitutes a judgment on the merits of a matter, even if it resulted from a violation of a procedural rule, and bars any attempt to revive the previous action." *Riverband Condo Association v. Groundhog Landscaping and Property Maintenance Inc*, 173 N.H. 372, 375 (2020) (quoting *Moulton-Garland v. Cabletron Systems, Inc*.,143 N.H. 540, 542 (1999)); *see Town of Plaistow v. Riddle*, 141 N.H. 307, 310 (1996) (judgment rendered "with prejudice" is conclusive on the matter).

The Suffolk Superior Court's two orders dismissing Armslist were "on the merits"— meaning the Savings Statute cannot help Plaintiffs. Any attempt to revive identical claims against Armslist is prohibited by the iron-clad principle that judgments rendered *with prejudice* are conclusive and cannot be revisited. Rather than face facts, Plaintiffs ignore the CDA Order, the Jurisdictional Order, and the court's December 14, 2021 docket entry dismissing Armslist from the Massachusetts Action, and focus solely on the Suffolk Superior Court's October 31, 2022 order dismissing what was then left of the complaint—claims against co-defendants, Headley and Johnson. This order, issued by the Clerk of the Suffolk Superior Court, was

---

[6] The Jurisdictional Order noted the court's previous ruling on the CDA, but did not withdraw it. Instead, it dismissed all of the Plaintiffs' claims against Armslist "with prejudice." Hamilton Decl., Ex. E.

procedural and was entered because Plaintiffs failed to timely report the status of their case by
October 31, 2022.  Hamilton Decl., Ex. F.  However, as of the December 14, 2021 Order,
Armslist had already been dismissed from the Massachusetts Action, *with prejudice,* for over ten
months.  At no time, did Plaintiffs seek to have the Court reconsider either of its decisions or
seek appellate review.[7]

> **2.      *The Savings Statute Cannot Prevent Application of the Three-Year
> Statute of Limitations for Personal Actions Because Plaintiffs Failed to
> File this Action Within One Year of the Suffolk Superior Court's
> December 2021 Dismissal of Plaintiffs' Claims With Prejudice.***

Even if the CDA Order and the Jurisdictional Order were not final judgments (and they
are), New Hampshire's three-year statute of limitations must still apply because Plaintiffs failed
to file the New Hampshire Action within one year of the December 2021 dismissal.  Plaintiffs
waited nearly two years to do so.  Without the benefit of the Savings Statute, the Plaintiffs'
claims are clearly barred by New Hampshire's three-year statute of limitations because Plaintiffs
filed in this Court over seven years after the January 2016 shooting of Officer Stokinger.  *See*
N.H. RSA § 508:4 ("[A]ll personal actions . . . may be brought only within 3 years of the act or
omission complained of . . . .").  However, the Savings Statute only safeguards the claims of
"diligent suitor[s'] right to a hearing in court until [they] reach a judgment on the merits."  *Berg*,
134 N.H. at 257, 259; *see also Roberts v. Gen. Motors Corp.*, 140 N.H. 723, 728 (1996), as
modified on denial of reh'g (Apr. 18, 1996) (finding that plaintiff was a "diligent suitor," and
could invoke the Savings Statute, in two subsequent actions because each subsequent suit was
filed within a year of the dismissal of each previous one).

---

[7] Plaintiffs presumably could have appealed the April 2020 and/or the December 2021 dismissal
but failed to do so.  *See* Mass. R. App. P. 4(a); M.G.L. c. § 118.  Had the appellate court upheld
the Jurisdictional Order and the CDA Order, the time for invoking the Savings Statute might
have been extended.  But Plaintiffs neglected to pursue that remedy.

By December 14, 2021, *at the latest,* Armslist ceased to be a party in the Massachusetts action. The Suffolk Superior Court's December 14, 2021 docket entry puts on an even finer point: "Party status: Defendant Armslist LLC: Dismissed by Court Order**."** Hamilton Decl., Ex. F. Here, the Plaintiffs were not "diligent suitors"; instead, at best, they were dilatory in their actions. Plaintiffs failed to appeal, or even attempt to appeal, the CDA Order or the Jurisdictional Order. Rather, they waited nearly twenty-one months after the Jurisdictional Order to file the New Hampshire Action, well after the twelve-month period provided by the Savings Statute had expired. Consequently, Plaintiffs' claims are untimely and must be dismissed, again.

**B.**  **Plaintiffs' Claims are Also Barred by the Doctrine of *Res Judicata* Because Through This Action, Plaintiffs Seek to Re-litigate Claims that Were Fully Litigated and Dismissed in the Massachusetts Action.**

The Court should dismiss Plaintiffs' claims under the doctrine of *res judicata* because the claims were previously fully litigated and dismissed in the Massachusetts Action. *Res judicata* prevents a party from re-litigating "any claim" that was, or could have been, raised in the prior litigation. *Grossman v. Murray*, 141 N.H. 265, 269 (1996). *Res judicata* extinguishes all rights to remedies related to all or any part of the transaction, or series of connected transactions that gave rise to the action. *Id*. at 269–270.

Pursuant to 28 U.S.C. § 1738, federal courts are bound to honor judgments of one state and their preclusive effect in a second state when a claim is brought in federal court and the defense of *res judicata* is asserted. *Marrese v. American Academy of Ortho. Surgeons*, 470 U.S. 373, 380 (1985); *Universal Ins. Co. v. Off. of Ins. Com'r*, 755 F.3d 34, 37–38 (1st Cir. 2014) ("According to the doctrine of *res judicata*, a final judgment on the merits precludes parties from relitigating claims that were or could have been brought in a prior action. A federal court must give preclusive effect to a state-court judgment if the state court would.") (internal citations

omitted); *see also Martone v. Sokol*, 2011 WL 6337645, at *2 (D.N.H. Dec. 19, 2011) (applying

Massachusetts law to determine *res judicata* effect of a Massachusetts judgment).  For *res

judicata* to apply, three elements must be met: (1) the identity or privity of the parties to the

present and prior actions; (2) identity of the cause of action; and (3) prior final judgment on the

merits.  *Id*.

       All three elements are met here, preventing Plaintiffs from re-litigating their claims

against Armslist.  First, the parties are identical.  Both in the Massachusetts Action in the Suffolk

Superior Court and the New Hampshire Action in this Court, Plaintiffs have sought recovery

from "Armslist."

       Second, the causes of action are the same.  Plaintiffs' claims in both actions arose from

the alleged shooting of Officer Stokinger by Headley using the gun that was allegedly sold to

Headley by Johnson, who purchased it from McNamara, who had in turn, posted it for sale on

Armslist.com.  *See* Compl., Dkt. 1, ¶¶ 19, 20, 302; *see, e.g*., *LaRace v. Wells Fargo Bank, N.A*.,

99 Mass.App.Ct. 316, 325 (2021) ("Causes of action are the same . . . when they grow out of the

same transaction, act, or agreement, and seek redress for the same wrong.") (quotations, citations

and brackets omitted).

       Third, the Massachusetts Action resulted in a judgment on the merits.  Like in the

Savings Statute analysis, a dismissal with prejudice constitutes a "final judgment on the merits"

for *res judicata* purposes.  *Martone*, 2011 WL 6337645, at *2.  The CDA Order and the

Jurisdictional Order both constitute final judgments on the merits.  In its CDA Order, the Judge

granted "Armslist's motion to dismiss for failure to state a claim under Mass. R. Civ. P. 12(b)

(6)," concluding that "Armslist is . . . entitled to immunity under the CDA."  Courts have

repeatedly held that "a dismissal for failure to state a claim, under Mass. R. Civ. P. 12(b)(6)

operates as a dismissal on the merits . . . with *res judicata* effect." *Mestek, Inc. v. United Pacific Ins. Co*., 40 Mass.App.Ct. 729, 731 (1996); *see also Isaac v. Schwartz*, 706 F.2d 15, 17 (1st Cir. 1983).

Similarly, the Jurisdictional Order, which was issued explicitly "with prejudice," was also a final judgment. Though dismissals for lack of personal jurisdiction need not constitute a final judgment, they can be final judgments if the Court so specifies and the circumstances warrant. *See* Mass. R. Civ. P. 41 (b) (3); *see Carp v. XL Ins*., 754 F. Supp. 2d 230, 232–234 (D. Mass. 2010) (plaintiffs' claims against a defendant dismissed with prejudice because the "only contact with the plaintiffs was his reply to Carp's email and an alleged telephone conversation with Carp."). Here, the Suffolk Superior Court did just that and for good reason. Before adjudicating the Jurisdictional Motion, the Court extended the Plaintiffs six months of jurisdictional discovery and followed that with a hearing on the Jurisdictional Motion. As in *Carp*, Plaintiffs failed to produce any evidence upon which the Suffolk Superior Court could assert personal jurisdiction over Armslist other than some immaterial emails between Armslist and a Massachusetts-based premium vendor unrelated to the alleged conduct in Plaintiffs' complaint. Given the lack of evidence to support jurisdiction, the Judge expressly stated in her order on December 14, 2021, that "[t]he claims against Armslist are hereby **DISMISSED**, *with prejudice*." Hamilton Decl., Ex. E, p. 8.

Every element of *res judicata* having been satisfied, this Court should prohibit Plaintiffs from re-litigating the same alleged harm against Armslist.

**C.**     **The New Hampshire Action Fails to State a Claim Because the Action is Barred Under the CDA Just as the Suffolk Superior Court Concluded When it Dismissed the Massachusetts Action.**

    **1.**     ***The CDA Bars Claims Against Website Operators Arising from Acts of "Publishing or Speaking" "Information" "Created or Developed" by Others.***

If the Court reaches the merits of Plaintiffs' claims, it should conclude that Plaintiffs have failed to state a claim upon relief can be granted because the CDA bars their claims.  Congress passed the CDA in 1996 to promote the Internet's development and the free flow of information, diversity of political discourse, cultural development and intellectual activity it provides.  47 U.S.C. § 230 (b) (1).  Congress recognized that the Internet offered the potential for an extraordinary advance in citizens' free speech and access to a myriad of services and resources free from government intervention, but that its potential was threatened by "tort-based lawsuits."  47 U.S.C. § 230 (a); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  Claims arising from a website's publication, editing or removal of content authored by others, if left unchecked, would stunt the growth of the medium, and disincentivize the development and use of filtering technologies that could empower parents and others to restrict access to objectionable and inappropriate material.  47 U.S.C. §230 (b)(2) & (4).

To address these concerns and support the Internet's expansion, the CDA includes two provisions that have been interpreted by the overwhelming majority of courts to bar claims arising from or related to the publication of materials on a website authored by others.  First, the Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230 (c) (1).  The term "interactive computer service" includes websites like Armslist.com.  The term "information content provider" is defined to include "any person or

entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." Armslist's private parties and Premium Vendors who post listings are included in the definition of information content provider.

Second, the CDA provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230 (e)(3). Simply put, causes of action inconsistent with any provision of Section 230 of the CDA are barred.

Courts, including the First Circuit, have nearly uniformly barred claims that seek to hold a website operator liable for harm caused by the posts of its users, reasoning these claims necessarily treat the "computer service provider" as the "publisher or speaker of the information content provider." *See Backpage.com,* 817 F.3d at 18;[8] *Monsarrat v. Newman*, 28 F.4th 314 (1st Cir. 2022) (finding that the CDA barred defamation claims against moderator of online community forum who copied posts of the forum's users from one online platform to another); *Zeran*, 129 F.3d at 330 (dismissing defamation claim even though AOL had knowledge of third-party postings that led to threatening phone calls to plaintiff because "[b]y its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service").

---

[8] The First Circuit's decision in *Backpage.com,* and similar decisions, prompted a legislative response by Congress, the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat 1253. This Act removed websites which advertised prostitution and underage sex trafficking from the protection of the CDA. *Id*. The Act, however, left the body of existing case law intact. As far as Armslist can tell, no Court has formally recognized that the Court's decision in *Backpage.com* has been superseded.

Even if the service provider could (or should) have discerned the offending post would lead to illegal conduct and harm, the CDA still bars the claim.  The fact that the operator could have done more to discourage, delete, or depress the offending content is not relevant—the claim cannot proceed.  *See e.g., Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) (claims against the operator of multiple financial data websites barred by the CDA noting: "notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech"); *Green v. America Online (AOL)*, 318 F.3d 465 (3d Cir. 2003) (plaintiff's negligence suit dismissed because claims sought to "hold AOL liable for decisions relating to the monitoring, screening, and deletion of content from its network"— actions "quintessentially related to a publisher's role").

> **2.     The First Circuit, Like the Overwhelming Majority of Jurisdictions, Has Interpreted the CDA Broadly to Protect Website Operators from Claims that their Websites' Structure or Design Is Beyond the CDA's Protection.**

Opinions issued by the First Circuit Court of Appeals illustrate the breadth of the protections afforded website operators by the CDA.  Regardless of the disgust a court (or individual or group) may feel about the content published, or the egregiousness of the conduct and harm alleged to have arisen from that content, the website operator is protected if its alleged liability is based on its exercise of traditional editorial functions.  *Backpage.com,* 817 F.3d at 18.  Editorial functions include not only the decision to publish, not publish, delete or prohibit, but also decisions about the website's structure and operation, including decisions "about what content can appear on the website and in what form," and "decisions about how to treat postings."  *Id*. at 21.

The First Circuit described *Backpage.com* as "a hard case," not based on any legal issues presented, but because "the law require[d] [denial of] . . . relief to plaintiffs whose

circumstances evoke outrage." *Id.* at 15.  The case involved three girls who alleged they were

trafficked for sex through advertisements posted on Backpage.com.  *Id.* at 16.  One girl

estimated that she had been raped over 1,000 times.  *Id.* at 17.  Even against this backdrop, the

First Circuit found the CDA protected Backpage.  The plaintiffs argued that their claims were

not barred by the CDA because Backpage was liable not as a publisher or speaker of third

parties' content but instead for their conduct in *designing and structuring* the website.  *Id.* at 20.

They argued Backpage knew that its users were posting sex trafficking advertisements and had

affirmatively designed its website in a way that assisted the posting of those advertisements.  *Id.*

Plaintiffs claimed that design coupled with the fact that Backpage profited from the

advertisements made it a participant in the sex trafficking, not a publisher or speaker of the ads.

*Id.*  The court rejected the theory and held that each of Backpage's practices was nothing more

than a traditional publisher function.  *Id.*

> ### 3. *The CDA Order Dismissing Plaintiffs' Claims Was Fully Litigated by the Plaintiffs and Armslist, and is Subject to the Doctrine of Collateral Estoppel and Should not be Re-Litigated in this Action.*

In the Massachusetts Action, Armslist moved to dismiss all of Plaintiffs claims arguing

they were barred under the CDA.  Citing *Backpage.com* and other precedent, that motion was

granted.  The question of the CDA's application to Plaintiffs' claims was fully litigated in the

Massachusetts Action by the Plaintiffs and Armslist and should remain undisturbed by this Court

under the doctrine of collateral estoppel.  Collateral estoppel bars a party to a prior action from

re-litigating any issue or fact actually litigated and determined in the prior action, even when that

issue relates to a different claim.  *Grossman v. Murray*, 141 N.H. 265, 269 (1996) (quotation

omitted).  Collateral estoppel may be applied where "(1) the issue sought to be precluded in the

later action is the same as that involved in the earlier action; (2) the issue was actually litigated;

(3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment." *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 770 (1st Cir. 2010). That is precisely what occurred here. There is no reason for the Court to take up the issue again. The issue having been fully litigated in the Massachusetts Action, this Action should be dismissed.

### 4. The CDA Bars Plaintiffs' Claims Against Armslist Because the Claims Seek to Hold Armslist Liable for its Editorial Decisions.

Regardless of collateral estoppel, on the merits, the CDA bars Plaintiffs' claims against Armslist because Plaintiffs seek to hold Armslist liable for the editorial decisions it has made in designing and structuring its website. Plaintiffs do not and cannot allege that Armslist created or materially participated in the content of McNamara's listing which, according to the complaint, led to the lawful sale to Johnson. Armslist's only connection to McNamara's listing is in operating the website on which he posted.

Plaintiffs' claims, consequently, take aim at Armslist's decisions in structuring and designing that website. The CDA protects editorial decisions. *See Backpage.com,* 817 F.3d at 21 (finding the CDA protects decisions about a website's structure and operation, including decisions "about what content can appear on the website and in what form," and "decisions about how to treat postings."); *see also Lycos,* 478 F.3d at 422 (noting that decision not to change website construct and operation was as much an editorial decision as a decision not to delete a particular posting and protected by CDA).

The complaint repeatedly alleges that Armslist designed and structured its website in a manner that encourages or assists the unlawful sale of firearms to prohibited purchasers. Even if true, the alleged design deficiencies fall squarely within "editorial functions" that cannot give rise to viable claims under controlling First Circuit case law. Claims asserting a website operator

20

failed to provide "basic safety measures," have repeatedly been deemed barred by the courts.
*See, e.g., Backpage.com,* 817 F.3d at 21 (noting its decision was consistent with others which
had "rejected claims that attempt to hold website operators liable for failing to provide sufficient
protections to users from harmful content created by others"); *MySpace, Inc.*, 528 F.3d at 418
(rejecting a claim from a minor victim of sexual assault that a website operator had failed to
"implement basic safety measures to protect minors").

      Plaintiffs also criticize Armslist for failing to mandate certain information be provided
from users (like purchase history and identity) while requiring other information (like location).
Courts have repeatedly held that decisions as to whether to publish or withdraw content is within
the "exercise of a publisher's traditional editorial functions." *Backpage.com*, 817 F.3d at 18; *see
also Zeran,* 129 F.3d at 330.   Plaintiffs' wish list of how Armslist should utilize those editorial
functions permeates their complaint. *See, e.g.,* Compl., Dkt. 1, ¶ 182. At their root, these
allegations are nothing more than criticisms of how Armslist designed its website and are
therefore barred by the CDA. *See Lycos*, 478 F.3d at 422 (defendant's decision not to implement
a website policy to reduce harmful content was equal, in an editorial sense, to deciding not to
delete a particular posting).  Plaintiffs do not, and cannot, allege that any of Armslist's conduct
actively participates in anything unlawful so as to remove its editorial conduct from CDA
immunity.

      Plaintiffs speculate that some purchasers who are prohibited from possessing firearms use
the website's filtering tools to identify private sellers because background checks are not
mandated in certain states.  Compl., Dkt. 1, ¶ 102.  Even if true, that and other information
available on Armslist.com, do not put Armslist outside of the CDA's protections. *See Small
Just. LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 322-23 (1st Cir. 2017) (finding that CDA

barred trademark infringement claims for posts on defendant's website even when defendant made posts more accessible by directing search engines to cache the posts on their websites). Such search features which sort users' posts are neutral tools which do not convert user's content into the content of the website.  *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) ("[A] website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online.").  Most users will use the tools and information provided for lawful purposes, while some may do so to commit unlawful acts.  That fact alone is of no moment, and the CDA bars claims which assert otherwise.

**D.  Plaintiffs' Attempts to Recast Armslist's Editorial Decisions as "Conduct" Is Contrary to Precedent and Congressional Intent, which Demonstrate Plaintiffs' Version of 230 Is Wrong.**

Plaintiffs' attempt to recast Armslist's editorial functions essentially as "conduct" and thus outside the CDA, also fails.  Aware of courts' broad interpretation of the CDA, throughout their complaint the Plaintiffs characterize Armslist's editorial decisions as "conduct" in an attempt to put it beyond the protection of the CDA which references "speech."  The Brady Center tried the same tactic in Wisconsin and it was rejected by the Wisconsin Supreme Court. *See Daniel v. Armslist, LLC*, 386 Wis. 2d. 449, 926 N.W.2d 710 (2019), *cert. denied* 140 S. Ct. 562 (2019).

If Plaintiffs were to have their way and courts recognized a distinction between conduct and speech under the CDA, this distinction would eviscerate CDA immunity.  Arguably, CDA immunity would be removed even in cases involving the very cause of action that prompted Congress to enact the CDA in the first place: defamation.  One could imagine a case where an internet platform like Facebook or X is sued for aiding and abetting defamation resulting from a libelous message posted by a user because its platform is designed to allow messages to be

disseminated to thousands in an instant.  Fortunately, under the majority view, the CDA would be interpreted broadly to protect the platform against all liability resulting from the speech of its users.  Under the Plaintiffs' theory, while Facebook or X would likely avoid direct liability for defamation, each could still be held liable for aiding and abetting that same speech and in effect be liable for the information provided by its users.  This result is inconsistent with the stated goals of the CDA, and cannot stand.  Neither can Plaintiffs' theory.

## IV.   CONCLUSION

For the reasons discussed above, Plaintiffs' claims are barred by the statute of limitations, *res judicata*, collateral estoppel, and the CDA.  Armslist respectfully asks the Court to dismiss Plaintiffs' complaint with prejudice.

Respectfully submitted,

ARMSLIST, LLC

By its counsel,

McLANE MIDDLETON,
PROFESSIONAL ASSOCIATION


Date: November 20, 2023          By:     */s/ Andrew R. Hamilton*
                                         Andrew R. Hamilton, NH Bar No. 265245
                                         Mark C. Rouvalis, NH Bar No. 6565
                                         Joseph A. Foster, NH Bar No. 838
                                         Min Ji (Stephanie) Nham, NH Bar No. 277584
                                         900 Elm Street,
                                         Manchester, NH 03101
                                         (603) 625-6464
                                         mark.rouvalis@mclane.com
                                         joe.foster@mclane.com
                                         andrew.hamilton@mclane.com
                                         stephanie.nham@mclane.com

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on this 20th day of November, 2023, copies of the foregoing document were served on all counsel of record via the court's electronic filing system.


*/s/ Andrew R. Hamilton*
Andrew R. Hamilton, Esq.

113424\23080443.v1