# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| KURT STOKINGER and JANELLA STOKINGER, | Civil Action No.: 1:23-cv-00428-PB-TSM |
| Plaintiffs, | *Hearing Requested* |
| vs. |  |
| ARMSLIST, LLC, |  |
| Defendant. |  |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ARMSLIST, LLC'S MOTION TO DISMISS CLAIMS AS BARRED BY THE STATUTE OF LIMITATIONS, RES JUDICATA, COLLATERAL ESTOPPEL AND THE COMMUNICATIONS DECENCY ACT OF 1996

MCDOWELL & MORRISSETTE, P.A.

282 River Road
Manchester, NH 03105

BRADY

840 First Street NE
Suite 400
Washington, DC 20005

BLANK ROME LLP

1271 Avenue of the Americas
New York, NY 10020

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 1

    A. Armslist Facilitates Illegal Firearm Purchases And Circumvents Federal And State Laws Designed To Keep Firearms From Dangerous People ................................................ 1

    B. Armslist Knew It Enables Prohibited Purchasers To Commit Crimes ................................... 4

    C. Armslist Could Have Chosen Not To Facilitate Trafficking Of Guns To Violent Criminals Through Its Website ................................................................................................ 4

    D. Armslist Facilitated The Shooting Of Officer Kurt Stokinger ................................................ 5

    E. Procedural History ............................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

I.    Legal Standard ........................................................................................................... 7

II.    The Stokingers' Claims Are Timely Pursuant To The Savings Statute ............................ 7

    A. The Massachusetts Personal Jurisdiction Opinion Does Not Bar Re-Filing ......................... 8

    B. The Court's CDA Ruling Does Not Bar Re-Filing ............................................................... 9

    C. Armslist Cannot Shorten the Statutory Period for Re-Filing ............................................. 10

III.    The Stokingers' Claims Are Not Barred By *Res Judicata* ........................................... 11

    A. Claim Preclusion ........................................................................................................... 12

    B. Alternative Determinations Doctrine ............................................................................... 13

IV.    The CDA Does Not Bar the Stokingers' Claims ........................................................... 16

    A. The Massachusetts CDA Ruling Lacks Preclusive Effect ................................................... 16

    B. The Stokingers' Claims Are Not Preempted by the CDA ................................................... 17

        1.    The Stokingers' Claims Are Not Based on Information Provided by Another Information Content Provider. ........................................................................ 19

        2.    The Stokingers' Claims Do Not Treat Armslist as a Publisher or Speaker. ................. 23

CONCLUSION .................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Audette v. Carrillo,*
No. 15-CV-13280-ADB, 2017 WL 1025668 (D. Mass. Mar. 16, 2017) ........................... 13, 15

*Barton v. Barton,*
125 N.H. 433 (1984) ................................................................................................................ 8

*Bauer v. Armslist, LLC,*
572 F. Supp. 3d 641 (E.D. Wis. 2021), *aff'd sub nom. Webber v. Armslist*
*LLC*, 70 F.4th 945 (7th Cir. 2023) ....................................................................................... 24, 25

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................................ 7

*Berg v. Kelly,*
134 N.H. 255 (1991) ............................................................................................................ 8, 11

*Bevilacqua v. Rodriguez,*
460 Mass. 762 (2011) ............................................................................................................. 9

*Brady v. Duran,*
119 N.H. 467 (1979) ............................................................................................................... 8

*Camreta v. Greene,*
563 U.S. 692 (2011) .......................................................................................................... 10, 17

*Chang v. TripAdvisor, LLC,*
No. CV 2021-00347, 2021 WL 6237376 (Mass. Super. Nov. 19, 2021) .............................. 23

*Chuan Wang v. IBM Corp.,*
82 Mass. App. Ct. 1108 (2012) .......................................................................................... 9, 12

*Costello v. United States,*
365 U.S. 265 (1961) ................................................................................................................ 9

*Elliott v. Donegan,*
469 F. Supp. 3d 40 (E.D.N.Y. 2020) ............................................................................... 18, 23

*Fair Hous. Council v. Roommates,*
521 F.3d 1157 (9th Cir. 2008) ....................................................................................... 20, 21, 22

*Fed. Trade Comm'n v. LeadClick Media, LLC,*
838 F.3d 158 (2d Cir. 2016) .................................................................................................. 25

*Foss v. E. States Exposition*,
    67 F.4th 462 (1st Cir. 2023) ..................................................................................8, 14, 15, 17

*Frederick v. State HHS*,
    No. 217-2018-CV-255, 2018 N.H. Super. LEXIS 20 (Dec. 5. 2018) ...............................10, 13

*Harris v. Sannella*,
    400 Mass. 392 (1987) .......................................................................................................9, 13, 17

*In re Sonus Networks, Inc. S'holder Derivative Litig.*,
    499 F.3d 47 (1st Cir. 2007) ...............................................................................................16, 17

*Integrated Techs. Ltd. v. Biochem Immunosystems (U.S.) Inc.*,
    2 F. Supp. 2d 97 (D. Mass. 1998) ............................................................................................9

*Irwin v. Com.*,
    465 Mass. 834 (2013) .............................................................................................................10

*J.S. v. Vill. Voice Media Holdings, LLC*,
    184 Wn.2d 95 (2015) ........................................................................................................20, 22

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016) ........................................................................................... *passim*

*Jarosz v. Palmer*,
    436 Mass. 526 (2002) .............................................................................................................17

*Kobrin v. Bd. of Registration in Med.*,
    832 N.E.2d 628 (Mass. 2005) ................................................................................................17

*Krause v. RocketReach, LLC*,
    561 F. Supp. 3d 778 (N.D. Ill. 2021) ....................................................................................23

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*,
    141 S. Ct. 13 (2020) ...............................................................................................................19

*Merriam Farm, Inc v. Town of Surry*,
    168 N.H. 197 (2015) ..............................................................................................................12

*Moore v. Mortg. Elec. Registration Sys., Inc.*,
    848 F. Supp. 2d 107 (D.N.H. 2012) .......................................................................................12

*Moulton-Garland v. Cabletron Sys., Inc.*,
    143 N.H. 540 (1999) ................................................................................................................8

*N. Am. Specialty Ins. Co. v. Lapalme*,
    258 F.3d 35 (1st Cir. 2001) ....................................................................................................13

*Nat'l Ass'n of the Deaf v. Harvard Univ.*,
   377 F. Supp. 3d 49 (D. Mass. 2019) ............................................................................18, 23

*Ocasio-Hernandez v. Fortuno-Burset*,
   640 F.3d 1 (1st Cir. 2011) ..........................................................................................7

*Patterson v. Patterson*,
   306 F.3d 1156 (1st Cir. 2002) ..............................................................................9, 12

*Riverbend Condo Assoc. v. Groundhog Landscaping & Prop. Maint. Inc.*,
   173 N.H. 372 (2020) ................................................................................................9

*Roberts v. Gen. Motors Corp.*,
   140 N.H. 723 (1996), *as modified on denial of reh'g* (Apr. 18, 1996) ...................11

*Rowe v. John Deere*,
   130 N.H. 18 (1987) ..................................................................................................8

*Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*,
   824 F.3d 1161 (9th Cir. 2016) ...................................................................14, 15, 16

*Rutanen v. Baylis (In re Baylis)*,
   217 F.3d 66 (1st Cir. 2000) ....................................................................................13

*Strobel v. Strobel*,
   123 N.H. 363 (1983) ..............................................................................................12

*Teatotaller, LLC v. Facebook, Inc.*,
   173 N.H. 442, 242 A.3d 814 (2020) .....................................................................25

*Town of Plaistow v. Riddle*,
   141 N.H. 307 (1996) ................................................................................................9

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
   478 F.3d 413 (1st Cir. 2007) ..................................................................................19

*Vanz, LLC. V. PMD Fin. Group, LLC*,
   2019 WL 1406150 (D.N.H. Mar. 28 2019) ...............................................8, 11, 12

*Webber v. Armslist LLC*,
   572 F. Supp. 3d 603 (E.D. Wis. 2021), *aff'd in part, rev'd in part*, 70 F.4th
   945 (7th Cir. 2023)...........................................................................................24, 25

*Webber v. Armslist LLC*,
   70 F.4th 945 (7th Cir. 2023) ..................................................................................25

*York Ford, Inc. v. Bldg. Inspector & Zoning Adm'r of Saugus*,
   647 N.E.2d 85 (Mass. Ct. App. 1995) ..............................................................14, 15

**Statutes**

47 U.S.C. § 230 ........................................................................................... *passim*

N.H. R.S.A. 159:10 ................................................................................................20

N.H. R.S.A. 159:14 ................................................................................................20

N.H  R.S.A. 508:10 .......................................................................................1, 8, 11

**Other Authorities**

Raising and Enforcing Res Judicata, 18 Fed. Prac. & Proc. Juris. § 4405 (3d ed.) ......................13

Mass. R. Civ. P. 41(b)(3) ...........................................................................................9, 13

Restatement (Second) of Judgments § 27 ..........................................................13, 14, 17

Fed. R. Civ. P. 12(b)(6) ......................................................................................7, 17, 18

Plaintiffs Kurt Stokinger and Janella Stokinger ("Plaintiffs") submit this memorandum of law in opposition to the Motion of Defendant Armslist LLC ("Armslist") to Dismiss Claims as Barred by the Statute of Limitations, Res Judicata, Collateral Estoppel and the Communications Decency Act of 1996 ("CDA").

## PRELIMINARY STATEMENT

This motion is yet another attempt by Armslist to avoid the consequences of its negligence. For purposes of this motion, it is undisputed that Armslist created and designed an online marketplace to facilitate illegal gun sales and purchases, which caused the shooting of Officer Kurt Stokinger and Plaintiffs' injuries. The Stokingers originally sought justice in Massachusetts state court, but the claims were dismissed for lack of personal jurisdiction and immunity under the CDA. As demonstrated below, neither ruling bars this new action under N.H. R.S.A 508:10.

Following dismissal, the Stokingers refiled their claims within one year pursuant to the New Hampshire savings statute. The claims in this action are timely and neither *res judicata* nor collateral estoppel bars this action. The CDA likewise does not preclude the instant suit. The Stokingers seek to hold Armslist accountable *for its own conduct* – not for the words of others. The CDA does not immunize parties' own conduct, in this case, Armslist's actions which led to the shooting of a decorated Boston Police Officer.

This Court should decline Armslist's invitation to impose procedural barriers where none exist. The Stokingers are entitled to seek justice against Armslist and this motion should be denied.

## BACKGROUND

### A. Armslist Facilitates Illegal Firearm Purchases And Circumvents Federal And State Laws Designed To Keep Firearms From Dangerous People

Armslist.com is a for-profit online firearms marketplace, funded through paid

advertisements, which facilitates sales and purchases of firearms and related accessories. Compl. ¶¶ 60, 62. Armslist created Armslist.com after several online marketplaces, including Craigslist, Amazon, and Google, stopped allowing online gun sales due to the danger of illegal sales. *Id*. ¶¶ 64, 66-68. Rather than avoid the risks that those responsible companies recognized, Armslist designed its website in a way that attracts and facilitates illegal gun purchases. *Id*. ¶ 70-71, 77.

Designing its website in a way that would attract people who cannot legally buy guns (including felons and domestic abusers), Armslist enabled prohibited people to easily buy firearms without impediment, record, or detection. Armslist's design of its site allows the circumvention of federal laws that require that gun dealers be federally licensed, conduct background checks on buyers, keep records of sales, and inform law enforcement when a purchaser buys more than one handgun in five business days. *Id*. ¶¶ 41-43, 92-98, 101.

Federal law only allows occasional sales by unlicensed private sellers. Armslist was well aware that law-abiding gun buyers can easily find a licensed gun dealer – over 64,000 across America – that provides law-abiding purchasers more selection, better service, higher quality, and lower prices than individuals engaged in private sales. *Id*. ¶¶ 77, 79-82, 84. Because unlicensed sellers are not required to conduct background checks on potential purchasers or to keep records of sales, private sales are more attractive to buyers for whom avoiding background checks and records are more important than quality, selection and price – that is, criminals or people with criminal intent. Armslist knows that it primarily caters to those who want to sell and buy guns without background checks, and Armslist's revenue from advertisements on its website is almost entirely supported by the traffic created by these sales. *Id*. ¶¶ 74-76. Armslist fuels a black market for illegal gun sales, leading to a twelve-fold increase (from 12,000 to 148,000) in firearms available for purchase on Armslist.com between 2011 and 2017. *Id*. ¶ 273.

Armslist was designed with specific features that facilitate and attract illegal gun sales. Armslist did not have to design its website in a way that enables these illegal acts; it chose to. *Id*. ¶ 77. The Complaint details how Armslist created, designed, and operated Armslist.com to target, attract, and facilitate anonymous illegal gun purchases, resulting in the foreseeable harm in this case. For example, Armslist:

- enables prohibited persons to buy guns, without screening or legal requirements (*Id*. ¶ 236c);

- enables illegal dealers to sell firearms without a license (*Id*. ¶ 96);

- does not require that sales be completed by licensed dealers (as other sites do). (*Id*. ¶ 236d);

- created data fields and search systems to enable potential purchasers to filter search results to avoid background checks and all other federal and state law requirements by browsing only guns being sold by unlicensed sellers. (*Id*. ¶¶ 113-15);

- barred flagging of illegal conduct, so illegal sales could be done with impunity;

- promised anonymity and no monitoring by creating and posting a "Terms of Use" stating that it will not investigate illegalities (which it knew would occur) (*Id*. ¶ 127);

- provided no guidance on the firearms laws users say (by merely clicking) they will follow (*Id*. ¶¶ 122-27, 132);

- enables parties to complete gun transactions anonymously, with no paper trail, and no questions asked (*Id*. ¶¶ 97, 111);

- assures buyers and sellers that it will do nothing to enforce or investigate legality (*Id*. ¶¶ 126-27); and

- provides no mechanism to see whether any red flags exist that would indicate potential illegality of buyer or seller, such as numerous purchases (*Id*. ¶ 129-30).

Armslist knows or should know that it facilitates illegal sellers and buyers evading federal and state laws. Nearly one in three advertisements on Armslist.com are posted by high-volume unlicensed sellers, who are likely "engaged in the business" of selling firearms (i.e., not legal "private sellers") in violation of federal law. *Id*. ¶ 179. Armslist could: (1) limit the number of guns that can be bought or sold by a user; (2) require that sellers provide information about themselves

and their business – including proof of license if they buy or sell in quantity; (3) inform users of the law; and (4) as other sites do, require users pick up guns only at licensed dealers who perform background checks. *Id*. ¶¶ 134, 183-85. Armslist fails to institute measures to prevent illegal gun sales, and instead facilitates illegal trafficking. *Id*. ¶¶ 7, 10-12, 132, 178-80, 185, 188.

### B.  Armslist Knew It Enables Prohibited Purchasers To Commit Crimes

Armslist was aware that its website facilitates illegal purchases of firearms and enables prohibited purchasers in committing crimes. *Id*. ¶¶ 136-37. In 2013, a report found that Armslist created a massive, unregulated weapons market where thousands of guns were illegally offered for sale by unlicensed dealers. The report revealed that one in thirty "Want-To-Buy" advertisements on Armslist.com were posted by someone barred from owning a gun, more than quadruple the rate at which prohibited persons were trying to buy at gun stores *Id*. ¶ 143.

Among other instances, guns purchased illegally through Armslist.com were used to kill a woman in Illinois in 2011; kill three people in Wisconsin in 2012; and kill a Chicago Police Commander in 2018. *Id*. ¶ 152-59, 168-70. In May 2018, prosecutors charged three gang-affiliated criminals who trafficked approximately 90 weapons from Kentucky to Chicago (including assault rifles, machine pistols, and guns with drum magazines holding 100 rounds). One of the guns was used weeks later in a drive-by shooting of a 15-year-old boy. *Id*. ¶ 171-74. All of these weapons were sold and purchased illegally through Armslist.com.

### C.  Armslist Could Have Chosen Not To Facilitate Trafficking Of Guns To Violent Criminals Through Its Website

Armslist maintained its negligent website design despite knowing that it facilitated gun trafficking, and knowing how to prevent it. In 2013, a report enumerated several steps Armslist could take to deter illegal gun dealing, including: (1) monitoring high-volume sellers and warning sellers who appear to be engaged in illegal gun selling; (2) providing users with a tool to report

repeat offenders to law enforcement; (3) requiring sellers to conduct background checks on would-be buyers; or (4) recommending that users conduct background checks and providing tools to facilitate such checks. Armslist could also require that purchasers from private sellers take delivery through a licensed dealer after a background check. Some of these safeguards have been adopted by other online gun marketplaces. *Id*. ¶ 185-86. None have been adopted by Armslist.

### D.  Armslist Facilitated The Shooting Of Officer Kurt Stokinger

The design and features of Armslist.com enabled a convicted felon, unable to legally buy a gun, to illegally obtain one and shoot Officer Stokinger. *Id*. ¶ 189-91. The shooter got his gun from a known gun runner, Sara Johnson ("Johnson"), whose selling practices relied on Armslist.com. The gun used to shoot Officer Stokinger was sold by Derek McNamara to Johnson for $460 at a McDonald in July 2016, in Warner, New Hampshire, after Johnson contacted him through a Armslist.com for-sale ad. Johnson was accompanied to this sale by Daniel Ray Sullivan, a convicted felon prohibited from possessing firearms. In July 2017, Johnson and Sullivan were indicted in the District of New Hampshire on gun charges. Johnson admitted to illegally providing firearms to Sullivan, and Sullivan admitted to contacting Armslist.com sellers via email to arrange meetings to purchase guns with Johnson. Because Armslist.com did not require registration and keeps no record of purchases, McNamara was not informed by Armslist of any red flags indicating that he was selling to an illegal gun dealer. *Id*. ¶¶ 204-15.

Johnson bought 30 to 63 firearms through Armslist.com to resell, even though she did not have a license to do so. *Id*. ¶ 216. She and/or Sullivan sold one of those guns to Grant Headley, a drug dealer and career criminal. As a career criminal, Headley was prohibited from purchasing or possessing a firearm. He was on probation following a five-year prison sentence, and at least 11 other charges relating to drug possession, drug dealing, and firearms. *Id*. ¶ 26-27.

On the morning of January 8, 2016, Officer Kurt Stokinger, a decorated nine-year veteran of the Boston Police Department, was shot with the gun sold by Johnson to Headley. *Id*. ¶¶ 19-20. Officer Stokinger's injuries would not have occurred absent Armslist's design and creation of its anonymous gun market.

### E.  Procedural History

On October 18, 2018, Plaintiffs filed a Complaint and Demand for Jury Trial and amended pleadings in Massachusetts state court in the action captioned *Stokinger, et ano. v. Armslist, LLC, et al.*, Civil Action No. 1884CV03236-F. Plaintiffs asserted the following causes of action: (1) Assault and Battery against Grant Headley, the shooter; (2) Negligence against Sara Johnson, the purchaser; (3) Negligence against Armslist; (4) Aiding and Abetting Tortious Conduct against Armslist; (5) Public Nuisance against Armslist; (5) Loss of Spousal Consortium against all three defendants; and (7) Loss of Support against all defendants.

On March 29, 2019, Armslist filed two motions seeking dismissal of Plaintiffs' original action. One motion claimed lack of personal jurisdiction, while the other asserted that Plaintiffs' claims were barred by §230 of the CDA. On March 13, 2020, the Massachusetts court granted the CDA motion, finding Armslist was entitled to immunity under that statute, and declining to rule on the jurisdictional question. Declaration of Andrew R. Hamilton, Esq., in Support of Armslist, LLC's Motions to Dismiss, ECF 20-2 ("Hamilton Decl."), Ex. B (CDA Order) at 1, 14.

On June 12, 2020, Plaintiffs moved for entry of separate and final judgment in order to permit prompt appeal of the court's ruling on CDA immunity. Hamilton Decl., Ex. F (Mass. Docket). Armslist opposed this motion and moved for partial reconsideration, requesting that the trial court also issue a determination with respect to personal jurisdiction. *Id.* On October 19, 2020, the Massachusetts trial court permitted jurisdictional discovery and, after discovery and additional

briefing, it granted Armslist's motion to dismiss for lack of personal jurisdiction. *Id.* The court therefore issued a memorandum and order dismissing the claims against Armslist with prejudice based on lack of jurisdiction on December 28, 2021. Hamilton Decl., Ex. E (Jurisdiction Mem. & Order). On November 1, 2022, the court entered judgment and dismissed Plaintiffs' complaint without prejudice. Hamilton Decl., Ex. F (Mass. Docket).

On September 12, 2023, Plaintiffs filed the instant action, asserting causes of action solely against Armslist. On November 20, 2023, Armslist moved to dismiss on various grounds.

## ARGUMENT

### I.   Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The question confronting a court on a motion to dismiss is whether *all* the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible. No single allegation need 'lead to the conclusion' . . . of some necessary element, provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 14-15 (1st Cir. 2011) (citations omitted).

### II.   The Stokingers' Claims Are Timely Pursuant To The Savings Statute

New Hampshire law clearly and unambiguously provides that the Stokingers' filing was timely. The state savings statute allows parties to re-file their lawsuit within one year of judgment if the right of action is not barred by the prior judgment. N.H. R.S.A. § 508:10.

In order to gain the benefit of New Hampshire's savings statute, (1) the first action must have been timely filed; (2) the first action must have been dismissed for reasons not barring the right of action or determining it upon its merits; (3) the second suit must be brought within one year of the judgment; (4) the second suit must be brought against the same defendant(s); and (5) a

second suit must be comprised of the same claim or claims that the Plaintiff asserted in the first action. *See Vanz, LLC. V. PMD Fin. Group, LLC*, 2019 WL 1406150, at *4 (D.N.H. Mar. 28 2019) (*citing Berg v. Kelly*, 134 N.H. 255, 257 (1991); *Brady v. Duran*, 119 N.H. 467, 470 (1979); *Rowe v. John Deere*, 130 N.H. 18, 23-24 (1987); and *Moulton-Garland v. Cabletron Sys., Inc.*, 143 N.H. 540, 543-44 (1999)). "It is well settled in this jurisdiction that a former judgment is not conclusive upon a matter in issue unless the judgment was 'on the merits.'"  *See Barton v. Barton*, 125 N.H. 433, 434 (1984) (determining if a right of action is barred by the first judgment).

The Stokingers' right of action is not barred by the prior judgment because neither Massachusetts ruling has preclusive effect and the re-filing is timely because it falls within the one year period allowed by New Hampshire law.

### A.  The Massachusetts Personal Jurisdiction Opinion Does Not Bar Re-Filing

Armslist repeatedly highlights the Massachusetts opinion dismissing claims with prejudice for lack of personal jurisdiction, alleging that it prohibits the current suit. But the original court's labeling of the dismissal "with prejudice" does not automatically render it preclusive. *Foss v. E. States Exposition*, 67 F.4th 462 (1st Cir. 2023) ("dismissal in action 3 was 'with prejudice.' But that feature of the dismissal does not in and of itself render it claim preclusive if it otherwise would not be. The 'with prejudice' label does not itself determine a dismissal's preclusive effect.").[1] Unsurprisingly, a decision as to whether a Massachusetts court may exercise jurisdiction over a party does not preclude that party from being subject to suit elsewhere where jurisdiction exists.

---

[1] Armslist's cited cases do not address whether dismissal for lack of personal jurisdiction can be with prejudice, nor whether a "with prejudice" label can impact the effect. *See Riverbend Condo Assoc. v. Groundhog Landscaping & Prop. Maint. Inc.*, 173 N.H. 372 (2020); *Town of Plaistow v. Riddle*, 141 N.H. 307 (1996). Rather, both addressed the court's silence in dismissing a nonsuit. *Riverband Condo Ass'n*, 173 N.H. at 377 (dismissal for nonsuit was with prejudice); *Town of Plaistow*, 141 N.H. at 311 (remanding to determine whether voluntary nonsuit was with prejudice).

Pursuant to Massachusetts law, a dismissal for lack of jurisdiction does not operate as an adjudication on the merits. *Integrated Techs. Ltd. v. Biochem Immunosystems, (U.S.) Inc.*, 2 F. Supp. 2d 97, 104-05 (D. Mass. 1998) ("A dismissal for lack of jurisdiction is not an adjudication on the merits for claim preclusion purposes and, therefore, would not preclude the plaintiff from reasserting the first claim in a different forum."); *Chuan Wang v. IBM Corp.*, 82 Mass. App. Ct. 1108, *3 (2012) (citing *Bevilacqua v. Rodriguez*, 460 Mass. 762, 779 (2011) (reversible error to find dismissal for lack of personal jurisdiction is "an adjudication on the merits"); Mass. R. Civ. P. 41(b)(3) ("any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction…operates as an adjudication upon the merits"); *see also Patterson v. Patterson*, 306 F.3d 1156, 1158 (1st Cir. 2002) (federal courts "'give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'").

Indeed, upon holding that it lacked jurisdiction, the Massachusetts trial court was unable to issue a decision on the merits. *See Costello v. United States*, 365 U.S. 265, 285 (1961) (noting the "fundamental jurisdictional defects which render a judgment void ... such as lack of jurisdiction over the person or subject matter"); *see also Harris v. Sannella*, 400 Mass. 392, 395 (1987) ("A judgment is void if the court from which it issues lacked jurisdiction over the parties….").

As a matter of law, the Massachusetts ruling on personal jurisdiction does not bar the Stokingers' right of action in New Hampshire, where personal jurisdiction exists.

**B.  The Court's CDA Ruling Does Not Bar Re-Filing**

The prior trial court ruling on CDA grounds also does not constitute a decision on the merits for purposes of the savings statute where the dismissal was based on immunity. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) (noting that if officials are entitled to qualified immunity, a court can dismiss the damages claim without ever deciding its merits); *Irwin v. Com.*, 465 Mass.

834, 841 (2013) ("'[T]he denial of a motion to dismiss on immunity grounds is always collateral to the rights asserted in the underlying action because it is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated.'").

New Hampshire courts permit re-filing despite an immunity-based dismissal. For example, in *Frederick v. State HHS*, the court permitted re-filing pursuant to the savings statute, noting that "[d]ismissal of a claim based on Eleventh Amendment immunity does not go towards the legal and factual sufficiency of a claim, and therefore shall not be considered a dismissal on the merits." No. 217-2018-CV-255, 2018 N.H. Super. LEXIS 20, *5 n.2 (Dec. 5. 2018). In dismissing the Stokingers' claims on CDA immunity grounds, the Massachusetts court never addressed the claim's "the legal and factual sufficiency," and thus the ruling was not a dismissal on the merits.

Moreover, despite Armslist's characterization, the Massachusetts court never stated that the dismissal was premised on a failure to state a claim. The complaint was dismissed as barred by the CDA (*See generally* Hamilton Decl., Ex. B), which constitutes a non-merits-based dismissal that does not preclude the Stokingers from relying upon the savings statute.

### C.  Armslist Cannot Shorten the Statutory Period for Re-Filing

Armslist attempts to re-write the savings statute, arguing the clock should have started when the Massachusetts court ruled on one of Armslist's motions. But the statutory language is clear that a party has "one year after the **_judgment_**." N.H. R.S.A. § 508:10 (emphasis added); *Roberts v. Gen. Motors Corp.*, 140 N.H. 723, 726 (1996), *as modified on denial of reh'g* (Apr. 18, 1996) ("when construing the meaning of a statute, 'where possible, we ascribe the plain and ordinary meanings to words used.'").

Judgment here was not entered until November 1, 2022, and the Stokingers filed the instant action on September 12, 2023. (Hamilton Decl., Ex. F at 3, 7). Courts routinely reject efforts like

Armslist's to narrow the statutory language. *See, e.g.*, *Roberts v. GMC*, 140 N.H. 723, 729 (1996) ("Since … the late nineteenth century, New Hampshire procedure has focused on 'what justice require[s],' not on 'strict precision in form.' That is why we make every effort to reach a judgment on the merits, to achieve the ends of justice unobstructed by imaginary barriers of form." (internal citation omitted)); *Berg v. Kelley*, 134 N.H. 255, 257 (1991) ("[The saving statute's] broad and liberal purpose 'is not to be frittered away by any narrow construction.'"); *see also Vanz, LLC v. PMD Fin. Grp., LLC*, Civil No. 17-cv-145-LM, 2019 WL 1406150, *6 (D.N.H. 2019) (court may not add limiting language that the legislature did not include).

Armslist also faults Plaintiffs for "neglect[ing] to pursue" appeals of the orders regarding either the CDA or personal jurisdiction. (Mot. at 12 n.7). This argument is particularly disingenuous where Armslist is well aware that the Stokingers intended to immediately appeal the CDA decision—including moving for a separate and final judgment to do so—but ***Armslist's*** motion prevented them from doing so. Instead of wasting judicial (and the parties') resources, the Stokingers re-filed the action, pursuant to the savings statute, in another jurisdiction where Armslist was subject to jurisdiction. Further, Armslist does not face any prejudice in these circumstances, where they have been on notice of the Stokingers' claims ***and*** the Stokingers' intent to re-file. *See Vanz, LLC v. PMD Fin. Grp., LLC*, Civil No. 17-cv-145-LM, 2019 WL 1406150, *7 (D.N.H. 2019) (defendant was on notice of allegations in second suit where prior, out-of-state action dismissed for lack of personal jurisdiction).

Both the law and equities support the Stokingers' re-filing. The instant action is timely and proper pursuant to the New Hampshire savings statute.

### III.    The Stokingers' Claims Are Not Barred By *Res Judicata*

Armslist erroneously argues that the Stokingers' claims are barred by *res judicata*, but claims are not precluded where there is no prior final judgment on the merits. As set forth above,

neither the CDA motion nor the personal jurisdiction motion resulted in a final judgment. Even if one of the Massachusetts court's rulings had been on the merits, however, *res judicata* still would not apply based on the Alternative Disputes Doctrine.

### A.  Claim Preclusion

*Res judicata* applies only if "(1) the parties are the same or in privity …; (2) the same cause of action was before the court in both instances; and (3) the first action ended with a final judgment on the merits." *Merriam Farm, Inc v. Town of Surry*, 168 N.H. 197, 199 (2015). The third element is determined under Massachusetts law. *See Patterson v. Patterson*, 306 F.3d 1156, 1158 (1st Cir. 2002) (federal courts "'give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'"). As an affirmative defense, Armslist bears the burden of proving all necessary elements. *Moore v. Mortg. Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107, 119 (D.N.H. 2012) (citing *Strobel v. Strobel*, 123 N.H. 363, 366 (1983)). Armslist cannot satisfy its burden to prove the claims are barred by *res judicata*.

  As discussed above, *res judicata* does not apply because there has been no final judgment on the merits. The jurisdictional ruling is not preclusive, notwithstanding the court's labeling. *See Chuan Wang v. IBM Corp.*, 82 Mass. App. Ct. 1108, *3 (2012) (dismissal for lack of personal jurisdiction is not "an adjudication on the merits"); Mass. R. Civ. P. 41(b)(3); § 4405 Raising and Enforcing Res Judicata, 18 Fed. Prac. & Proc. Juris. § 4405 (3d ed.) ("The first court does not get to dictate to other courts the preclusion consequences of its own judgment").

The CDA ruling is also not preclusive because it is based on immunity and given the lack of personal jurisdiction. *Harris v. Sannella*, 400 Mass. 392, 395 (1987) ("A judgment is void if the court from which it issues lacked jurisdiction over the parties."); *Frederick v. State HHS*, No. 217-2018-CV-255, 2018 N.H. Super. LEXIS 20, *5 n.2 (Dec. 5. 2018) ("[d]ismissal of a claim based

on Eleventh Amendment immunity does not go towards the legal and factual sufficiency of a claim, and therefore shall not be considered a dismissal on the merits.").[2]

### B. Alternative Determinations Doctrine

Even if the Massachusetts court had issued a ruling on the merits, the Stokingers' claims would still be viable pursuant to the Alternative Determination Doctrine. That doctrine holds that "'[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone,' and neither receives preclusive effect." *See Rutanen v. Baylis (In re Baylis)*, 217 F.3d 66, 71 (1st Cir. 2000) (quoting 1 Restatement (Second) of Judgments § 27 cmt. i) (holding issue preclusion did not apply to "judgment, which rests on alternative grounds, is affirmed by the intermediate appeals court on both grounds, but by the court of last resort on only one ground affirmed on one of two grounds"); *Audette v. Carrillo*, No. 15-CV-13280-ADB, 2017 WL 1025668, at *6 (D. Mass. Mar. 16, 2017) ("When a court offers two grounds for dismissal, one of which constitutes dismissal 'on the merits' and one of which does not, previous cases caution against finding preclusive effect."); *accord York Ford, Inc. v. Bldg. Inspector & Zoning Adm'r of Saugus*, 647 N.E.2d 85, 88-89 (Mass. Ct. App. 1995) (applying doctrine, and noting trend in favor of adopting it); *see also Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1165-66 (9th Cir. 2016) ("We therefore hold, consistent with decisions by the Sixth and Seventh Circuits, that res judicata does not apply to a judgment that rests on both a

---

[2] Armslist implicitly concedes issue preclusion is not appropriate with respect to personal jurisdiction, given that the company never asserts collateral estoppel as to personal jurisdiction. *N. Am. Specialty Ins. Co. v. Lapalme*, 258 F.3d 35, 45 (1st Cir. 2001) ("There are few principles more securely settled in this court than the principle which holds that, absent exceptional circumstances, an appellant cannot raise an argument for the first time in a reply brief."); *see generally* Mot. The Stokingers therefore address collateral estoppel below in connection with the CDA.

lack of jurisdiction and a merits determination.").

The First Circuit has affirmatively adopted the Alternative Determination Doctrine, most recently in *Foss v. Eastern States Exposition*, 67 F.4th 462 (1st Cir. 2023). There, the court held that "adjudication of a claim by a court of first instance is not claim preclusive if the court of first instance rested adjudication on at least one ground that would not have made the adjudication claim preclusive if it had been the sole ground for the judgment…." *Foss*, 67 F.4th at 467.

This doctrine is based on several policies that support the Stokingers' refiling. "First, when there are two bases for the decision, an appellant in [Plaintiffs'] position would have little motivation to appeal from [an] allegedly erroneous finding" on one basis for the decision where, even if such appeal were successful, the finding on the other basis for the decision is likely to be affirmed. *York*, 647 N.E.2d at 88; *see also* Restatement (Second) of Judgments § 27 (1982) ("of critical importance, the losing party, although entitled to appeal from both determinations, might be dissuaded from doing so because of the likelihood that at least one of them would be upheld and the other not even reached").

Second, to require such an appeal would, "in effect, require cautionary appeals litigating issues on appeal for their possible effect on future indeterminate collateral litigation, which neither party can be sure will occur," and which would thereby undermine an important purpose of *res judicata*, i.e., "to minimize litigation and bring it to an end." *York*, 647 N.E.2d at 88; *Foss v. E. States Exposition*, 67 F.4th 462, 470 (1st Cir. 2023) ("In sparing litigants from having to secure a pyrrhic victory, the alternative-determinations doctrine … spares appellate courts from having to weigh in on cases that, in practical reality, may be of no real consequence to the parties or to the appeal itself beyond making way for a mere contingent future action in which those merits issues could be addressed in a case in which their resolution would matter."). These policies and the

14

doctrine apply equally to issue and claim preclusion. *See, e.g.*, *Foss v. E. States Exposition*, 67 F.4th 462, 469-70 (1st Cir. 2023) (citing *Ruiz*, 824 F.3d at 1164-65) (recognizing such policies and extending the doctrine under federal res judicata law to apply to claim preclusion); *see also Audette v. Carrillo*, Civ. No. 15-13280, 2017 WL 1025668, at *6 (D. Mass. Mar. 16, 2017) (applying the alternative determinations doctrine to both claim and issue preclusion).

The procedural history of this action strongly supports application of the Alternative Determinations Doctrine. As Armslist admits in its motion, Plaintiffs sought to immediately appeal the first order dismissing claims against Armslist based on the CDA, but as a result of the filing, pendency, and determination of Defendant's motion to reconsider personal jurisdiction, Plaintiffs did not do so. *See* Mot. 20 at 6-8. "[T]he alternative-determinations doctrine usefully protects litigants who have claims that may well be meritorious -- but that were dismissed in part for a reason disconnected from their merits -- from having to engage in what appears to be mere appellate hoop-jumping to keep alive the possibility of bringing the claim." *Foss v. E. States Exposition*, 67 F.4th 462, 470 (1st Cir. 2023).

Particularly where Armslist's conduct impeded entry of a final judgment, the Massachusetts judgment does not and should not preclude the Stokingers from pursuing their claims in New Hampshire. *See Ruiz*, 824 F.3d at 1165 (explaining "the losing party, although entitled to appeal from both determination[s], may be dissuaded from doing so as to the determination going to the 'merits' because the alternative determination[ ], which in itself does not preclude a second action, is clearly correct" and that "[t]he rules of res judicata should not encourage or foster appeals in such instances").[3]

---

[3] Armslist's decision to file separate motions has no bearing. The original motions were filed simultaneously, and the Massachusetts court's initial decisions on the motions were issued in a single order, which deferred ruling on Armslist's jurisdictional argument based on the dismissal

IV.    **The CDA Does Not Bar the Stokingers' Claims**

Armslist's argument that the Stokingers' claims are barred under the CDA fares no better than its arguments for preclusion. As a threshold matter, the Massachusetts court's CDA ruling does not have a collateral estoppel effect as a matter of law because: the court lacked jurisdiction; the dismissal was based on immunity (not failure to state a claim); and the Alternative Determinations Doctrine dictates that the first adjudication was not preclusive.

Further, because the First Circuit's interpretation of the CDA makes clear that the "safe harbor" provision does not shield Armslist from liability, the Stokingers' claims are not preempted. Thus, Armslist's motion to dismiss on the basis of CDA immunity should be denied on the merits.

**A.  The Massachusetts CDA Ruling Lacks Preclusive Effect**

As an initial matter, the Massachusetts state court's opinion on CDA immunity does not have a preclusive effect in this action. The collateral estoppel effect of the opinion must be analyzed under the law where it originated--Massachusetts. *See In re Sonus Networks, Inc. S'holder Derivative Litig.*, 499 F.3d 47, 56 (1st Cir. 2007). In order to establish collateral estoppel under Massachusetts law, three elements must be met: "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." *Id.* In addition, and as particularly relevant here, the issue decided in the prior adjudication must have been essential to the earlier judgment."  *Id.* at 57. (quoting *Kobrin v. Bd. of Registration in Med.,* 832 N.E.2d 628, 634 (Mass. 2005); *see also Jarosz v. Palmer*, 436 Mass. 526, 533 (2002) (holding that under Massachusetts law, a ruling has to be

---

on CDA grounds. Accordingly, the decisions operate as alternative grounds for dismissal and should be treated as such. Therefore, neither is entitled to preclusive effect.

"essential" to "the final determination on the merits of the proceeding" for it to have a collateral estoppel effect). In other words, "[i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded." *Id.* (quoting Restatement (Second) of Judgments § 27 comment h (1982)).

Here, as set forth in Section III, *supra*, the Massachusetts ruling is not entitled to collateral estoppel for several reasons.

First, the CDA ruling was void as a matter of law because the Massachusetts court decided that it did not have personal jurisdiction over the parties. *See Harris v. Sannella*, 400 Mass. 392, 395 (1987) ("A judgment is void if the court from which it issues lacked jurisdiction over the parties, lacked jurisdiction over the subject matter, or failed to provide due process of law.").

Second, the ruling was based on immunity, not failure to state a claim under Rule 12(b)(6), and therefore is not a ruling on the merits. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) (noting that if officials are entitled to qualified immunity, a court can dismiss the damages claim without ever deciding its merits).

Finally, the Alternative Determinations Doctrine holds that the first adjudication is not preclusive where the court dismissed on at least one ground that would not have made the adjudication claim preclusive if it had been the sole ground for the judgment. *Foss v. Eastern States Exposition*, 67 F.4th 462, 467 (1st Cir. 2023). Where the Massachusetts court <u>also</u> dismissed for lack of personal jurisdiction, the doctrine clearly applies. Accordingly, the CDA ruling was not essential to a merits-based judgment, and therefore does not have a preclusive effect here.

### B.  The Stokingers' Claims Are Not Preempted by the CDA

The so-called "safe harbor" provision of the CDA offers Armslist no protection. "Preemption under the [CDA] is an affirmative defense." *Nat'l Ass'n of the Deaf v. Harvard Univ.*,

17

377 F. Supp. 3d 49, 68 (D. Mass. 2019). Therefore, for the Court to dismiss claims on a Rule 12(b)(6) motion based on CDA preemption, "the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude." *Id.* (internal quotations omitted); *see also Elliott v. Donegan*, 469 F. Supp. 3d 40, 55–56 (E.D.N.Y. 2020) ("[D]ismissal is only appropriate pursuant to § 230 on a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint."). "A plaintiff is not required to anticipate and plead around affirmative defenses raised by a defendant." *Id.* (internal quotations and alterations omitted).

Section 230(c)(1) of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider. 47 U.S.C. § 230(c)(1). "Congress enacted this statute partially in response to court cases that held internet publishers liable for defamatory statements posted by third parties on message boards maintained by the publishers." *See Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016).

The First Circuit has held that Section 230(c)(1) "shields conduct" if three elements are met: (1) the defendant "is a provider or user of an interactive computer service; (2) the claim is based on information provided by another information content provider; and (3) the claim would treat [the defendant] as the publisher or speaker of that information." *Backpage.com*, 817 F.3d at 19 (internal quotations omitted).

Here, Armslist is not entitled to CDA immunity because it cannot establish the second or third elements. In particular, as to the second element, the Stokingers pled that Armslist contributed a critical piece of the content of the gun advertisements on its website, thus their claims are not based solely on "information provided by another information content provider" (an argument that

was not made or addressed in *Backpage.com*). Likewise, as to the third element, the Stokingers' claims do not treat Armslist as the "publisher or speaker of that information," but rather focus on Armslist's own role in developing content. For these reasons, Armslist cannot establish that the CDA preempts all of the Stokingers' claims, and claims must survive dismissal.

### 1. The Stokingers' Claims Are Not Based on Information Provided by Another Information Content Provider.

In order for Armslist to claim protection under Section 230(c)(1), the Stokingers' claims must be "based on information provided by another information content provider." *Backpage.com*, 817 F.3d at 19. Section 230(f)(3) defines "information content provider" as "any person or entity that is responsible, ***in whole or in part***, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis added). "This is a broad definition, covering even those who are responsible for the development of content only 'in part.'" *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007); *see also Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 16 (2020) (internal quotations omitted) (emphasis in original) ("[A]n information content provider is not just the primary author or creator; it is anyone responsible, *in whole or in part*, for the creation or development of the content."). Because Plaintiffs' Complaint includes claims based on information provided, at least in part, by Armslist itself, Armslist cannot evade liability.

The CDA has properly been construed by the Washington Supreme Court to allow claims against a website that facilitated sex trafficking through ads on its site. *J.S. v. Vill. Voice Media Holdings, LLC*, 184 Wn.2d 95 (2015). That court recognized that a website operator enjoys no protection under the CDA if it plays an active role in developing content (like advertisements) that also involve some input from third parties. *See id. at* 101-02. As noted in the concurring opinion:

> The main purpose of subsection 230(c) is not to insulate providers from
> civil liability for objectionable content on their websites, but to protect providers

19

from civil liability for limiting access to objectionable content. Ironically, the dissent would turn section 230 upside down, insulating [websites for] expanding access to objectionable content.

184. Wn.2d at 107 (Wiggins, J. concurring). The Court held that Backpage was not entitled to any protection under the CDA because it designed its website to incorporate features that "encourage[d]" advertisements for illegal and socially pernicious commerce. *See id.* at 102-03 (internal quotation omitted). The advertisements on Armslist's website are similarly illegal as a person who is not licensed to sell handguns may only sell handguns to a person who is ***personally known*** to her or him or who is licensed to sell handguns. *See* N.H. R.S.A. 159:14 (emphasis added). In fact, any person who, without being licensed, sells, ***advertises*** or exposes for sale, or has in his possession with the intent to sell, pistols or revolvers, shall be guilty of a class B felony if a natural person, or guilty of a felony if any other person. N.H. R.S.A. 159:10 (emphasis added). Armslist should not be entitled to any protection under the CDA.

The Ninth Circuit has similarly rejected the absurdity that would result from allowing the CDA to shield parties from liability for their own misconduct in developing or helping to develop dangerous content. *See Fair Hous. Council v. Roommates*, 521 F.3d 1157, 1164 (9th Cir. 2008) (Congress's goal was not to create a "lawless no-man's-land on the Internet").

Armslist's motion to dismiss alleges that "Plaintiffs do not and cannot allege that Armslist created or materially participated in the content of McNamara's listing." Mot. at 20. In fact, the pleadings include numerous allegations regarding Armslist's affirmative choices and contributions to the website and posts advertised therein. *See* Compl. ¶¶ 9, 11, 23, 92-112.

Among other features, the Stokingers pled that Armslist "pre-labeled both 'For Sale' and 'Want to Buy' postings as being posted by or being directed to 'Private Part[ies]' if the user did not have an established account when using the 'Create a Listing' function." *Id.* ¶ 106. This "private party" label—which enables gun traffickers such as Johnson to evade federal and state

law requirements and thus detection, and resulted in the Stokingers' injuries in this case—is "authored" and "generated entirely by" Armslist "without any interaction from users." *Id.* ¶¶ 106-12. The addition of the "Private Party" tag, resembles *Roommates*, where the text of discriminatory options provided in drop-down menus (which were authored by Roommates.com but ultimately selected by users) was displayed as part of user profiles that involved some third-party input. *See Roommates*, 521 F.3d at 1165.

Armslist's filtered search function (as described in Complaint ¶¶ 109-16) also closely approximates Roommates.com's active role in supplying a search system that filtered results based on discriminatory information produced, in part, by Roommates.com – a function for which the website enjoyed no CDA protection. *See* 521 F.3d at 1167 ("Roommate is not entitled to CDA immunity for the operation of its search system, which filters listings…Roommate designed its search system so it would steer users based on the preferences and personal characteristics that Roommate itself forces subscribers to disclose.").

The Complaint also alleges that Armslist "acted as a co-author of advertisements for sales to gun traffickers like Johnson by contributing a critical piece of content to these advertisements." Compl. ¶ 112. Because "a website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct," *J.S.*, 184 Wn.2d at 103, it is clear that Armslist's conduct falls squarely within the exception.

In addition to these specific allegations regarding Armslist's contribution to the postings on its website, Plaintiffs also allege that Armslist more broadly develops and/or contributes to the substance of the content on its website by, *inter alia*, providing guidance to users in its FAQ section regarding how to filter vendors, including by the "private party" filter that Armslist adds to certain posts, and assuring buyers and sellers that it would do nothing to enforce the law or monitor

transactions. Compl. ¶¶ 98-105. This affirmative conduct essentially coaches buyers and sellers on how to avoid background checks, record-keeping, and other regulations of gun sales to avoid law enforcement detection. Much like in *J.S.*, where the defendant could not invoke immunity for its advertisement posting rules which were "specifically designed… so that pimps can continue to use Backpage.com to traffic in sex," *J.S.*, 184 Wn.2d at 103, Armslist cannot invoke immunity for its policies that were specifically designed so that firearms traffickers can continue to use Armstlist.com to traffic in guns.

Turning to Defendant's argument, the First Circuit's decision in *Backpage.com* does not help Armslist here, because the plaintiffs in that case did not advance this theory, but rather confined their argument to the third requirement for CDA immunity—whether the causes of action treated Backpage as the publishers or speaker.[4] Other courts, however, including *J.S.* and *Roommates*, and a district court within the First Circuit, *National Association of the Deaf v. Harvard University*, have explicitly refused to dismiss claims based on CDA immunity on a motion to dismiss when a plaintiff broadly alleges that the defendant is "responsible for the content that is hosted on its websites and platforms." 377 F. Supp. 3d at 69; *see also, e.g.*, *Chang v. TripAdvisor, LLC*, No. CV 2021-00347, 2021 WL 6237376, at *2 (Mass. Super. Nov. 19, 2021) (declining to dismiss on CDA immunity when the allegations were "sufficient to suggest that Defendants were, at least in part, responsible for creating the content" at issue); *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 785 (N.D. Ill. 2021) (denying motion to dismiss when the plaintiff's allegations on their face did not establish that the information in defendant's database was "exclusively provided by 'another information content provider'"); *Elliott v.*

---

[4] Though raised by "[c]ertain amici," the court declined to consider "issues which the litigants, whatever their reasons might be, have chosen to ignore." *Backpage.com*, 817 F.3d at 19 n.4.

*Donegan*, 469 F. Supp. 3d 40, 57–58 (E.D.N.Y. 2020) (rejecting defendant's argument that she did not contribute to the content at issue, noting that a defendant "may not rely upon the absence of facts not pled in the complaint to secure CDA immunity on a motion to dismiss").

Finally, given the broad allegations regarding Armslist's responsibility for the content that is on its website, its "invocation of CDA immunity is premature" at best. *Nat'l Ass'n of the Deaf*, 377 F. Supp. at 69. The Stokingers are, at a minimum, entitled to discovery regarding Armslist's own contributions to the postings on its website, and broader development of the posted content.

In sum, notwithstanding that Plaintiffs are "not required to anticipate and plead around affirmative defenses raised by Defendants," the Stokingers have nonetheless pled that Defendant contributed, at least in part, to the content of its website that led to their injuries. Therefore, Armslist cannot satisfy the second required element for CDA immunity based on the face of the Complaint, and dismissal on CDA grounds is inappropriate.

### 2. The Stokingers' Claims Do Not Treat Armslist as a Publisher or Speaker.

Armslist's claim to CDA immunity also fails because the Stokingers' claims do not treat Armslist "as the publisher or speaker of that information." *Backpage.com*, 817 F.3d at 19. Armslist cannot hide behind the First Circuit's decision in *Backpage.com*, because the allegations in this case are distinguishable and do not compel the same result. Rather, this Court should follow the reasoning in two recent federal cases against Armslist, where the courts declined to dismiss claims against Armslist because the plaintiffs' claim did not require the court to determine whether Armslist was the "publisher" or the "speaker." *See Bauer v. Armslist, LLC*, 572 F. Supp. 3d 641, 663 (E.D. Wis. 2021), *aff'd sub nom. Webber v. Armslist LLC*, 70 F.4th 945 (7th Cir. 2023); *Webber v. Armslist LLC*, 572 F. Supp. 3d 603, 616 (E.D. Wis. 2021), *aff'd in part, rev'd in part*, 70 F.4th 945 (7th Cir. 2023).

In *Backpage.com*, the First Circuit found that sex trafficking victims' claims under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") were barred by Section 230(c)(1). 817 F.3d at 22. In addition to the TVPRA claims, the plaintiffs brought claims under a Massachusetts consumer protection statute, which forbids "unfair or deceptive acts or practices in the conduct of any trade or commerce," as well as claims alleging abridgements of intellectual property rights. *Id.* at 17. Notably, the plaintiffs in *Backpage.com* did not bring claims for negligence or any of the other claims at issue in the instant litigation, and therefore the First Circuit did not analyze CDA immunity as to those causes of action.

The First Circuit in *Backpage.com* noted that the plaintiffs had an "uphill climb" because the TVPRA claims that they asserted "appear[ed] to treat Backpage as the publisher or speaker of the content of the challenged advertisements," and because the plaintiffs were "trafficked by means of these advertisements, there would be no harm to them but for the content of the postings." *Id.* at 19. The court found that the "choice of what words or phrases can be displayed on the site" are "traditional publisher functions" and that the "publisher or speaker" language of the CDA extended to the website policies and practices at issue. *Id.*

On the other hand, in *Bauer* and *Webber*—claims against the very defendant in this action—the U.S. District Court for the Eastern District of Wisconsin found that the plaintiffs' claims (who were victims of gun violence like the Stokingers here) were not barred by the CDA. In doing so, the court in *Bauer* noted that the plaintiffs were not raising claims of "defamation or obscenity or copyright infringement—the types of claims that would require the court to determine whether Armslist is a 'publisher' or 'speaker' of content." 572 F. Supp. 3d at 663.

Similarly, the court in *Webber* noted that because the case involved claims "sounding in negligence and public nuisance based on Defendants' affirmative conduct," it appeared that

Section 230 of the CDA was "not even relevant" to the case. 572 F.Supp.3d at 616. However, even assuming that Section 230 did apply, the court in *Webber* found that the claims did not seek to treat Armslist as the "publisher or speaker" of the post in questions, but rather to hold Armslist liable for their "role in developing or co-developing their own content." *Id.*[5]

Here, in addition to Armslist's contributions to the content (which is exempt from CDA immunity for the reasons set forth above), the Stokingers' claims extend beyond the posting of the gun that was ultimately purchased and used to shoot Officer Stokinger. Rather, the Stokingers' claims, as in Webber, extend to Armslist's "own conduct in creating the high-risk gun market and its dangerous features." *Webber*, 572 F. Supp. 3d at 616.

For these reasons, the Stokingers' claims do not treat Armslist as the "publisher or speaker of any information provided by another information content provider," and therefore dismissal pursuant to the CDA is not warranted. *Id.*; *Bauer*, 572 F. Supp. 3d at 663; *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 176–77 (2d Cir. 2016) (finding defendant not immune under CDA because it was "not being held liable as a publisher or speaker of another's content," but for its "own deceptive acts or practices"); *Teatotaller, LLC v. Facebook, Inc.*, 173 N.H. 442, 453, 242 A.3d 814, 823 (2020) (declining to dismiss complaint at motion to dismiss stage when it was not clear from the face of the complaint whether third element of CDA immunity test was met).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Armslist's Motion to Dismiss, and grant Plaintiffs any further relief the Court deems just proper and equitable.

---

[5] While *Bauer* and *Webber* were appealed, the Seventh Circuit dismissed the claims on other grounds and therefore declined to rule on the issue of CDA immunity. *Webber v. Armslist LLC*, 70 F.4th 945, 950 (7th Cir. 2023).

Dated: January 5, 2023                    Respectfully submitted,

                                          **MCDOWELL & MORRISSETTE, P.A.**

                                          By: _/s/ Mark D. Morrissette_
                                          Mark D. Morrissette, Esq., NH Bar No. 10033
                                          Brian J. Stankiewicz, Esq., NH Bar No. 276345
                                          282 River Road
                                          Manchester, NH 03105
                                          (603) 623-9300
                                          mmorrissette@mcdowell-morrissette.com
                                          bstankiewicz@mcdowell-morrissette.com

                                          **BRADY**

                                          Douglas N. Letter, Esq., DC Bar No. 253492
                                          (admitted *pro hac vice*)
                                          Erin Davis, Esq., NC Bar No. 36173
                                          (admitted *pro hac vice*)
                                          Jenna Tersteegen, Esq., NY Bar No. 5574405
                                          (admitted *pro hac vice*)
                                          840 First Street NE, Suite 400
                                          Washington, DC 20005
                                          (202) 202-370-8100
                                          dletter@bradyunited.org
                                          edavis@bradyunited.org
                                          jklein@bradyunited.org

                                          **BLANK ROME LLP**

                                          John D. Kimball, Esq., NY Bar No. 1416031
                                          (admitted *pro hac vice*)
                                          Martin S. Krezalek, NY Bar No. 4719142
                                          (admitted *pro hac vice*)
                                          Robyn L. Michaelson, Esq., NY Bar No. 5323944
                                          (admitted *pro hac vice*)
                                          1271 Avenue of the Americas
                                          New York, NY 10020
                                          (212) 885-5000
                                          john.kimball@blankrome.com
                                          martin.krezalek@blankrome.com
                                          robyn.michaelson@blankrome.com

                                          *Attorneys for Plaintiffs Kurt and Janella*
                                          *Stokinger*

26